UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD LEE,

                    Petitioner,

v.                                                    Case No. 5:02-cv-83

KURT JONES,                                           Hon. Wendell A. Miles

                    Respondent.
_____/


ORDER ADOPTING MAGISTRATE JUDGE'S
 REPORT AND RECOMMENDATION

        This matter is before the court on Petitioner Ronald Lee's Objections to United States

Magistrate Judge Ellen S. Carmody's Report and Recommendation (R&R) dated January 7,

2008  recommending that Petitioner's petition for writ of habeas corpus be denied because the

grounds he raises for habeas relief have no merit.  Petitioner has filed objections to the R&R.  For

the reasons that follow, the court overrules Petitioner's objections and adopts the Magistrate

Judge's report and recommendation.

        This court is required to make a de novo review upon the record of those portions of the

R&R to which specific objections have been made.  28 U.S.C. § 636(b)(1)(B).  The court may

accept, reject or modify any or all of the magistrate judge's findings or recommendations.  Id.

        Petitioner was employed by the victim, Manson Grant (Grant), to do lawn maintenance.

Grant referred to Petitioner as "his yard boy."  A dispute arose as to whether Grant owed

Petitioner $25.00 for work performed.  Subsequently, on July 25, 1997, Grant's daughter-in-law,

Donetta Bolden, found him at his home severely beaten.  His pockets had been turned out and

the telephone lines had been cut.  Grant stated to his daughter-in-law, neighbor Renee Williams, his daughter Allean Ruth Roberts, and Detective Clifton Johnson that his "yard boy" had been the assailant.  Grant viewed six pictures presented by Detective Johnson of males of similar appearance, including Petitioner.  Grant identified Petitioner's picture as his assailant.  Grant died approximately one month later.

Petitioner was charged with armed robbery.  After a jury trial in the Muskegon County Circuit Court, Petitioner was convicted and sentenced to 25 to 40 years' incarceration.  Petitioner raised eight claims in his petition for writ of habeas corpus, all of which he raised in his state court appeals.  He objects to the Magistrate Judge's conclusion as to each claim.

<u>Standard of review</u>

This court's standard of review of a habeas claim is set forth at 28 U.S.C. § 2254(d):

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the "contrary to" clause, a federal habeas court may grant the petition if the state court arrived at a conclusion opposite to the reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court had on a set of materially indistinguishable facts.  <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000).  Under the "unreasonable

application" clause, a federal habeas petition may be granted if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the petitioner's case.  Id.

Discussion

### Sufficiency of the evidence (Claim I)

At the time of Petitioner's conviction, the elements of armed robbery in Michigan were: (1) an assault, (2) felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute.  People v. Johnson, 547 N.W. 2d 65, 71 (Mich. Ct. App. 1996).  Petitioner argues that there was insufficient evidence to prove beyond a reasonable doubt that he took the victim's property.

Grant's daughter and daughter-in-law  testified that Grant routinely carried large sums of money on his person.  Petitioner acknowledged during a police interview that he knew Grant always carried large sums of money.

When Grant was discovered, his pockets were inside out and his empty wallet was a few feet from his body.  Grant informed Detective Johnson that at the time of the attack he had money in the pockets of his pants and shirt, and that when he awoke from the beating he realized that his pockets were empty.

Petitioner sold a guitar and vacuum cleaner to the G&G Pawn and Outlet on July 10, 1997 and July 19, 1997 respectively.  On July 25, 1997, the day Grant was found beaten, Petitioner returned to G&G and, paying cash, repurchased the guitar and vacuum cleaner for a total price of $296.80.

Petitioner's cell-mate at the Muskegon County Jail testified that Petitioner had told him

3

that he went to Grant's home to collect the $25.00 he was owed.  Grant eventually paid him the money, but informed him that he would no longer employ him.  According to Petitioner, this upset him and he hit Grant with a pipe.  He did not tell his cell-mate whether or not he also stole money from Grant.

The test for a sufficiency of the evidence claim is whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319-20 (1979).  The evidence showed that Petitioner believed Grant had shorted him; that he went to Grant's home to collect money; Grant always carried large sums of money and Petitioner was aware of this fact; Grant was found with his pockets turned out and his empty wallet on the floor; and, that the same day Grant was found beaten, Petitioner had a substantial amount of cash to repurchase his guitar and vacuum cleaner. The court finds that the Magistrate Judge correctly concluded that, based upon this evidence, that a rational trier of fact could reasonably infer that after the attack Petitioner looked for and took money from Grant.

**Confrontation clause (Claim II)**

Petitioner contends that the Sixth Amendment Confrontation Clause was violated when Donetta Bolden, Renee Williams and Detective Johnson testified concerning out-of-court statements made by Grant when identifying Petitioner.  The trial court permitted the testimony under Michigan's catch-all hearsay exception, which excludes from the hearsay rule statements not covered by other exceptions "but having equivalent circumstantial guarantees of trustworthiness . . . ."  MRE 803(24).  The trial court found that statements made to Bolden and

4

Williams at the time they discovered him when he could not get up to answer the door and was in physical distress were spontaneous under the circumstances, and, therefore, contained guarantees of trustworthiness.  Four days later, while still hospitalized, Grant, who was "fading in and out," made his identifying statement to Detective Johnson.  The trial court found that persons in Grant's condition generally do not fabricate statements, and the statement was consistent with that made to Bolden and Williams.  In affirming the trial court, the Michigan Court of Appeals considered that there was no evidence that Grant suffered from memory loss before the assault, was incoherent when he made his statements, was never confused about what happened to him, and never gave nonsensical information or answers to questions concerning the incident.  In addition, while hospitalized after the incident, his cognitive functioning declined but he was still oriented to person and place, and knew what happened to him.  There was no evidence that the statements were not voluntary, or were the product of pressure or undue influence from police or others.  Grant had ample opportunity to observe his attacker, and he never wavered about his identification.

At the time of Petitioner's conviction, the test for allowing hearsay statements of an unavailable declarant is whether the statements have "indicia of reliability," by either falling "within a firmly rooted hearsay exception," or having  particularized guarantees of trustworthiness."  Ohio v. Roberts, 448 U.S. 56, 66 (1980).  The "particularized guarantees" are determined based upon the totality of the circumstances, restricted to those that surround the making of the statement and render the declarant particularly worthy of belief."  Idaho v. Wright, 497 U.S.  805, 816 (1990); Anthony v. DeWitt, 295 F.3d 554, 562 (6th Cir. 2002).  The Supreme Court identified factors "widely viewed as determinative of whether a statement may

be placed before the jury though there is no confrontation of the declarant." <u>Dutton v. Evans</u>, 400 U.S. 89, 91 (1970).  These factors include: (1) whether the hearsay statement contained an express assertion of past fact, (2) whether the declarant had personal knowledge of the fact asserted, (3) whether the possibility that the statement was based upon a faulty recollection is remote in the extreme, and (4) whether the circumstances surrounding the statement make it likely that the declarant fabricated the assertion of fact.  <u>Id.</u> At 88-89.  Based upon the evidence pertaining to Grant's identification statements, the court finds that the decision in the state courts was not contrary to clearly established federal law, or based upon an unreasonable determination of the facts presented in the state court proceedings.

### Pre-custody lineup (Claim III)

Detective Johnson showed Grant several photographs at the hospital.  From the pictures, Grant identified Petitioner as his attacker.  Petitioner claims that this violated his Sixth Amendment right to counsel.  The Michigan Court of Appeals concluded that he was not entitled to counsel at the pre-custody photographic line-up.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.   In <u>Kirby v. Illinois</u>, 406 U.S. 682, 688 (1972), the Supreme Court held that the Sixth Amendment right to counsel attaches only at or after the adversary judicial proceedings have been initiated against him.  The <u>Kirby</u> Court found there was no right to counsel at a pre-indictment line-up. <u>Id.</u> at 682.  The Supreme Court later stated in <u>United States v. Gouveia</u>, 467 U.S. 180, 188 (1984) that "the right to counsel does not attach until the initiation of adversary judicial proceedings" such as "formal charge, preliminary hearing, indictment, information, or

arraignment."  "It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of the government and defendant have solidified.' "  <u>Id</u>. at 189 (citing <u>Kirby</u> at 689).  In <u>Moran v</u>. <u>Burbine</u>, 475 U.S. 412, 430 (1986) the Supreme Court explained that the Sixth Amendment right to counsel "becomes applicable only when the government's role shifts from investigation to accusation."  Here, at the time of the photographic line-up, the case was in the investigative stage.  Accordingly, the state court did not misapply clearly established federal law, and did not unreasonably apply the law to the facts**.**

### Ineffective assistance of counsel (Claim IV)

Petitioner claims that his trial counsel was ineffective by failing to request jury instruction CJI2d 7.8 - Identification.  The instruction provides the factors a jury should consider when deciding how dependable an identification is, including: the proximity of the witness to the defendant at the time of the crime; the length of time the witness observed the defendant; whether the defendant had previously known the defendant; the witness's state of mind at the time; the length of time between the crime and the identification; and any instances where the witness failed to identify the defendant.  However, the trial court did instruct the jury on witness credibility in general:

> There is no fixed set of rules for judging whether you believe a witness, but it may help you to think about these questions:
>
> One, was the witness able to see or hear clearly?  How long was the witness watching or listening?  Was anything else going on that might have distracted the witness?
>
> Two, did the witness seem to have a good memory?
>
> Three, how did the witness look and act while testifying?  Did the witness seem to be making an honest effort to tell the truth or did the witness seem to evade the questions or argue with the lawyers?

7

Four, does the witness's age and maturity affect how you judge his or her testimony?

Five, does the witness have any bias, prejudice or personal influence in how this case is decided?

Six, have there been any promises, threats, suggestions or other influences that affected how the witness testified?

In general, does the witness have any special reason to tell the truth or any special reason to lie?

All in all, how reasonable does the witness's testimony seem when you think about all the other evidence in the case?

The Michigan Court of Appeals found that this instruction was adequate. The jury was aware that identification was an issue, and that the state had to prove Petitioner's guilt beyond a reasonable doubt.

It is firmly established federal law that a habeas petitioner asserting an ineffective-assistance claim must show that his counsel's performance was deficient and that the deficiency resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984); and see Wiggins v. Smith, 539 U.S. 510, 521 (2003). In particular, "[t]o establish prejudice [the defendant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (quoting Strickland, 466 U.S. at 694).

The instruction that was given to the jury by the trial court basically set forth the same factors to be considered as did the more specific identification instruction, albeit in different language. Petitioner has not identified any factor included in instruction CJI2d 7.8 that the jury was not aware of, which, if known, would have probably changed the outcome. Assuming that

8

counsel should have requested the specific identification instruction, Petitioner has failed to show that it resulted in prejudice.  The state court's decision on this claim was not a misapplication of clearly established federal law, nor an unreasonable application of the law to the facts.

Ineffective assistance of counsel  (Claim V)

Petitioner contends that because his attorney refused to allocute on his behalf at sentencing, he received ineffective assistance of counsel.  Defense counsel informed the court that he considered allocution inappropriate because the case would definitely be appealed.  Petitioner argues that declining to allocute simply because there will be an appeal denies a defendant assistance in seeking leniency in the sentencing process.  The Magistrate Judge concluded that, even assuming counsel's actions were unreasonable, Petitioner again failed to satisfy the second prong of the Strickland test, which requires a showing of prejudice.  Strickland at 687.      The Michigan Court of Appeals concluded that:

> Defendant fails to make any attempt to show that the outcome of the sentencing proceeding would have been different if counsel had allocuted on his behalf.  Defendant does not proffer one mitigating factor or circumstance that his counsel should have brought to the trial court's attention, which would have changed the outcome of the sentence.

Petitioner argues that "[c]ounsel's diligence is needed to present to the court extenuating facts and circumstances, explain conduct, correct errors in reports of a defendant's past conduct, and appeal to the equity of the court."  People v. Dye, 6 Mich. App. 217, 219 (1967).  However, Petitioner failed, originally and in his objections, to identify any facts, circumstances, conduct or errors that needed correcting, that could reasonably have been expected to result in a lesser sentence.  The state court's decision was not an unreasonable application of established federal

law, nor an unreasonable determination of the facts as presented.

Sentencing errors (Claim VI)

The trial court sentenced Petitioner to the maximum allowed under the Michigan

Sentencing Guidelines.  Petitioner contends that the trial court erred by (1) failing to consider all

sentencing factors, and (2) failing to individualize Petitioner's sentence.  With regard to his first

claim, the Michigan Court of Appeals stated:

> [D]efendant argues that the court did not consider all applicable factors and
> standards in sentencing him, and that his sentence is disproportionate.  Again,
> we disagree.
> It is obvious that the trial court had complete information, reviewed the PSIR,
> and considered the necessary sentencing factors.  Its remarks demonstrate that
> it considered the specific facts of defendant's case.  It clearly satisfied the
> articulation requirement and did not need to articulate all the factors or goals
> of sentencing.  People v. Lee, 622 N.W.2d 71, 84, 243 Mich.App. 163,
> 187(2000).

Even assuming that the trial court violated state law, to prevail Petitioner must establish a

violation of federal law.  See Pulley v. Harris, 465 U.S. 37, 41 (1984) (explaining that a federal

court cannot issue a writ of habeas corpus "on the basis of a perceived error of state law).  A

sentence may violate federal law if the trial court relied on "misinformation of constitutional

magnitude," or based the sentence on impermissible factors such as race, gender, religion, or

political affiliation."  To prevail on a misinformation claim, a petitioner must show (1) that the

information before the sentencing court was materially false, and (2) that the court relied on the

false information in imposing the sentence.  United States v. Tucker, 404 U.S. 443, 447 (1972).

A sentencing court demonstrates actual reliance on misinformation when the court gives

"explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific

consideration" to the information before imposing sentence.  Id. at 444.  There is no evidence

10

that the trial court considered false information.  Petitioner simply argues that the trial court relied too heavily on the brutality of the criminal act and the goal of deterrence and failed to give appropriate weight to other factors.  Thus, Petitioner does not state a claim based upon "misinformation of a constitutional magnitude."  Moreover, he does not allege that the trial judge based the sentence on constitutionally impermissible factors.  Accordingly, he is not entitled to habeas relief on this alleged sentencing error.

Petitioner's claim that the trial court failed to individualize Petitioner's sentence is likewise without merit.  Citing People v. Milburn, 435 Mich. 630, 636 (1990), he argues that under Michigan law, the sentence imposed must be proportionate to the seriousness of the circumstances surrounding the offense and the offender.  He reasons that Grant's death sometime after the incident was not a result of the injuries he sustained during the robbery.  Therefore, Petitioner's actions were not the "most serious conduct on the continuum of criminal behavior."

Federal law does not demand strict proportionality between a crime and its punishment. Harmelin v. Michigan, 501 U.S. 957, 959-60 (1991); United States v. Marks, 209 F.3d 577, 583 (6th Cir. 2000).  Rather, there is a "narrow proportionality principle" whereby only "extreme sentences that are grossly disproportionate to the crime are prohibited."  Harmelin 501 U.S. at 995 (upholding Michigan's penalty of life imprisonment without parole for possession of more than 650 grams of cocaine); United States v. Flowal, 163 F.3d 956, 963 (6th Cir. 1998).  Thus, "only an extreme disparity between crime and sentence offends the Eighth Amendment."  Marks, 209 F.3d at 583.  As Petitioner's sentence was within the applicable sentencing guidelines, there is no "extreme disparity" between the crime and the sentence he received.

11

**Ineffective assistance of counsel (Claim VII) and Speedy trial (ClaimVIII)**

Petitioner objects to the Magistrate Judge's conclusion that these claims are procedurally defaulted.  A habeas petitioner procedurally defaults a claim where "a state procedural rule ... prevents the state courts from reaching the merits of the petitioner's claim."  Seymour v. Walker, 224 F.3d 542, 549-50 (6th Cir. 2000).  Federal courts must consider four factors when determining whether a habeas petitioner has procedurally defaulted a claim.  Gonzales v. Elo, 233 F.3d 348, 353 (6th Cir. 2000).  First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.  Second, the court must decide whether the state courts actually enforced the state procedural sanction.  Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.  Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001).

Petitioner argues that the form order entered by the Michigan appellate courts failed to establish that the ruling was based upon a failure to comply with a state procedural rule. Under M.C.R. 6.508(D)(3) a court may not grant relief if the defendant presents grounds which could have been raised on direct appeal or a prior motion.  Petitioner does not contend that he failed to properly present these claims on direct appellate review or a proper motion.  When Petitioner did raise the claims, they were denied by the Michigan Supreme Court specifically because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." As to the third requirement, a state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. Rogers v. Howes, 144 F.3d 990, 992 (6th Cir. 1998) (citing Ford v. Georgia, 498 U.S. 411, 423-

24 (1991)).  Rule 6.508(D) has been followed since 1990,  <u>Simpson v. Jones</u>, 238 F.3d 399, 407
(2000), citing <u>Luberda v. Trippett</u>, 211 F.3d 1004, 1008 (6th Cir. 2000); <u>Jones v. Toombs</u>, 125
F.3d 945, 947 (6th Cir. 1997), and is an adequate and independent state ground to deny review.
<u>Simpson</u> at 407; <u>Howard v. Bouchard</u>, 405 F.3d 459, 477 (6th Cir. 2005) (stating that it "is well-
established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an
adequate and independent state ground on which the Michigan Supreme Court may rely in
foreclosing review of federal claims").  It is clear that the claims are procedurally defaulted.

However, "[a] procedurally defaulted claim may be considered in federal habeas corpus
proceedings only if the petitioner either shows 'cause' for his failure to comply with the state's
procedural rules and 'prejudice' resulting from the alleged violation of federal law or shows that
the federal court's refusal to consider the claim will result in a 'fundamental miscarriage of
justice.' " <u>Girts v. Yanai</u>, 501 F.3d 743, 753 (6th Cir. 2007), quoting <u>Hargrave-Thomas v. Yukins</u>,
374 F.3d 383, 387 (6th Cir. 2004).

<u>Speedy Trial (Claim VIII)</u>

Petitioner claims he was denied a speedy trial in violation of his Sixth Amendment rights.
In <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972), the Supreme Court set forth four factors that must
be considered in determining whether a defendant's Sixth Amendment right to a speedy trial has
been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3)
whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to
the defendant.  No one of these factors constitutes a "necessary or sufficient condition to the
finding of a deprivation of the right of speedy trial." Id. at 533.  The length of the delay is the
threshold factor for any Sixth Amendment speedy trial claim.  <u>United States v. Watford</u>, 468

F.3d 891, 901 (6th Cir. 2006).  The length of the delay is measured from the date of the

indictment or the date of the arrest, whichever is earlier.  Redd v. Sowders, 809 F.2d 1266, 1269

(6th Cir. 1987); United States v. Marion, 404 U.S. 307, 320 (1971).  A delay is presumptively

prejudicial if it is "uncommonly long" or "extraordinary."  Doggett v. United States, 505 U.S.

647, 651-52 (1992).  Generally, a delay is presumed prejudicial and deemed sufficient to require

further analysis when it exceeds one year.  Watford, 468 F.3d at 901; Wilson v. Mitchell, 250

F.3d 388, 394 (6th Cir. 2001).  If there is no delay that is presumptively prejudicial, the court

need not consider the other factors.  Doggett, 505 U.S. at 651-52 ("Simply to trigger a speedy

trial analysis, an accused must allege that the interval between accusation and trial has crossed

the threshold dividing ordinary from 'presumptively prejudicial' delay.").

Petitioner was arrested on July 29, 1997 and arraigned on September 22, 1997.  His trial

began on April 14, 1998.  A delay of approximately eight and one-half months is not

presumptively prejudicial, and Petitioner has presented no facts establishing that he actually

suffered some prejudice.

Ineffective assistance of counsel (Claim VII)

Petitioner claims that during the preliminary examination, defense counsel failed to pay

attention during the testimony of Officer Gary Cheatum, and, as a result, misstated the Officer's

testimony during cross-examination.  Petitioner has shown neither cause nor prejudice for his

procedural default of this claim.  To meet the "cause" requirement in procedural default cases,

the petitioner must show that "'some objective factor external to the defense impeded counsel's

efforts to raise the claim in state court."  McCleskey v. Zant, 499 U.S. 467, 493 (1991), quoting

Murray v. Carrier, 477 U.S. 478, 488 (1986).  Petitioner fails to make such a showing.  Nor can

14

he show prejudice, considering that there is no evidence that in finding probable cause, the trial court relied on counsel's questions or arguments rather than Officer Cheatum's testimony.

Conclusion

The court, having reviewed the Magistrate Judge's report and recommendation, the relevant portions of the case file, and Petitioner's objections and supporting documents, finds that the Magistrate Judge has made a thorough and accurate review of all appealable issues and agrees with the reasoning and recommended disposition contained in the Report and Recommendation.

Accordingly, the court OVERRULES the Petitioner's objections (docket # 55), ADOPTS the Magistrate Judge's Report and Recommendation (docket. # 54), and DENIES the Petition for Writ of Habeas Corpus (docket. # 1).


So ordered this 22nd day of February, 2008.

                                         /s/ Wendell A. Miles
                                        Wendell A. Miles
                                        Senior U.S. District Judge